The first case today is number 23-1159, United States v. Randall Crater. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning, Your Honor. Scott Lopez for the appellant, Randall Crater. If I could reserve three minutes for rebuttal. Okay, you may. Your Honors, the text of the Sixth Amendment enshrines not only the right to compulsory process, but the right to present a defense. And the relevant history and tradition from the earliest days of the Republic establishes that no one, no matter how lofty his station in life, is exempt from the reach of the compulsory process rights of even the lowliest defendant. Indeed, the history and tradition of the Sixth Amendment is so clear that the government doesn't even attempt to argue that the appellant did not have the right to call the witnesses at issue, and that the right to call these witnesses was constitutionally protected. The government concedes that the text of the Sixth Amendment applies to the appellant and sidesteps the constitutional analysis established by the Supreme Court in Heller and Bruhn by asserting that the district court nevertheless had the discretion to quash appellant's subpoenas because he did not comply with the so-called TUI regulations. Counsel, why does the Supreme Court's jurisprudence from Bruhn and Heller apply here? Those are Second Amendment cases, and there are Sixth Amendment cases that have been decided by the Supreme Court and by our court, which lay out the relevant standard for the Sixth Amendment, and those haven't been overturned. So aren't we required and bound to follow those cases rather than the mode of analysis in Heller and Bruhn? Well, Your Honor, it's our position that the mode of analysis with respect to constitutional analysis changed with Heller and has continued with Bruhn. But, Counsel, the Supreme Court has been very clear that unless and until it tells us that it has overturned a particular case, we have to follow that case. So how could we not follow the Supreme Court's Sixth Amendment case law here? Well, there is no Sixth Amendment case that the Supreme Court has decided with respect to this particular issue. So whether or not the court has the discretion to quash a subpoena based on a failure to comply with the TUI regulations. But it's laid out general standards, I think, that require us to look at whether the testimony that the defendant wants to present would be material and with respect to one case said that the offer of proof needs to be... If I could just have a moment. Of course. In the United States, Valenzuela, Bernal, the court said in that case that the defendant was required to provide the court with some plausible basis for those witnesses. However, I submit that that case is clearly distinguishable from this case. And in that particular case, it was clear from the record that those witnesses had no material and favorable evidence for the defense. Because in that case, as you may recall, it was the prosecution of an individual who was transporting aliens illegally in the United States. Two of the passengers were in the United States illegally. And before they were deported, they were interviewed by an assistant US attorney who determined that they had no evidence that would have been with two competing concerns. One was the federal policy of enforcing immigration laws, and the other was with respect to the Sixth Amendment. And in that case, because the court determined on the record that there was no favorable information, that the Sixth Amendment had not been violated. That's not the case here. You're absolutely right. The facts are different, but the legal standard wouldn't really depend on the facts. So I wonder if you could give your best position, your best argument for why the testimony that your client wanted to put forward here would have been material and favorable to his defense. Your Honor, I'm actually raising a more fundamental issue. I'm raising the issue of whether or not a defendant has the right to subpoena any witness. Okay, counsel, but that right, the subpoena that we hold, you have that right. Judge Rickleman, I think, is on point. You can subpoena, you don't have to go through TUI, you can subpoena whoever you want, but it still has to be material or has to be relevant, because if it's not relevant, the court still has discretion to decide it's not relevant. After the witness is on the stand and testifying, or... Or there's going to be a proffer at some point, or the judge will... Are you suggesting that we don't have to go into TUI, it's a criminal case, you have your Sixth Amendment right, you can call the witness, and then if they try to quash the witness subpoena, it's not through TUI, it's through a proffer or a hearing with the court, or maybe outside of the jury's presence, sit to witness and the judge can determine if it's relevant or not. That would be what you're asking for? What I'm saying simply is that looking at the text of the Sixth Amendment, there are no conditions on subpoenaing witnesses, and if the defense attorney in a case believes in good faith that there's favorable evidence that could be gained from any particular witness, in this case, federal agents, he has the right under the Sixth Amendment to subpoena that witness and to call him as a witness. Hold on, that's the... Oh, go ahead. So Judge Rickleman asked you what evidence would you put forward if you were required to show favorable and materiality? You responded that you're making a more fundamental constitutional argument, so do you then acknowledge if we disagree with you on the constitutional argument, you lose? If this court were to find that the Supreme Court precedent prohibits this court from ruling differently in this case, then yes, I lose. Would you like to take a minute to tell us what evidence you would proffer under our standard of showing materiality and favorability, or would you just rather rest on the constitutional argument? No, Your Honor, we did have a limited opportunity to provide the court with an offer of proof over three or four days, a little bit of information here, a little bit of information there, if you look at the record. But we put forth that allowing TUI to prevent us from calling these witnesses to this stand violated the Sixth Amendment, the defendant's Sixth Amendment right. That issue is not only an issue of first impression in this court, but it's also an issue of first impression in the Supreme Court. But I thought we were talking about the alternative basis of materiality and favorability, setting TUI to the side. So, part of the problem in this particular case is that these witnesses were adverse witnesses, and a defense attorney has the opportunity to cross-examine these witnesses. What I had planned to do with these witnesses was to identify all the steps they did not take in this case to investigate this case. One of the critical issues in this case was whether or not the MyBitcoin was a cryptocurrency or a virtual currency between the years of 2014 and 2017. The government never presented any evidence that they had done any type of forensic evaluation of that particular issue. Rather, they put up an expert, getting into my second argument, who I submit was not qualified to render the opinions that she rendered, and sidestepped the issue of whether or not the MyBitcoin was, in fact, a virtual currency or a cryptocurrency during the relevant period, which the government claimed was not, and that statements to the contrary were false statements, and those false statements were the basis for the charge and the conviction. Now, in this particular case, there was evidence through Mr. Lynch that there was a thumb drive that he had in his possession, which contained... So, let me go back in the fact... Counsel, can I... I'm sorry to interrupt you, but I understand where you're going. Just so you know, but my question for you is, let's just assume, actually, we agree with you on the constitutional argument, and then we have to do the next step of the analysis, which is, was the error prejudicial to you here? And you have made an argument for structural error in your brief, but doesn't our case law say pretty clearly that we use harmless error review for this type of Sixth Amendment error, not structural error? I believe that the case law is pretty clear that this type of prevention of allowing a defendant to present a defense is, in fact, a fundamental constitutional right that, like failing to have counsel, is a structural error in making the entire trial fundamentally flawed. What case law are you relying for the proposition that this is structural rather than harmless error? If I could just have a... See, I only have a minute. You can come back on rebuttal if you want to use... Okay, I will do that. Sure. And let me ask you, counsel, going to the issue of structural error. We have a recent case from 2022, U.S. versus Vasquez Rosario. I assume you're familiar with that case. Yes, sir. In that case, we didn't go into the constitutional issue because it was not relevant. So your argument would be here, it is relevant, and therefore, I have a constitutional right. That would be your... That's correct, Your Honor. Okay. Your Honor, in closing, there's also the issue of whether or not this expert should have been permitted to testify without a daubert here. Now, be clear, the defendant or the appellant is not claiming that if after a daubert hearing, the court decided that, yes, this testimony was admissible, we would have been fine with that. But in this case, we're talking about a cryptocurrency, a new issue that had never been presented to, I believe, any court. Maybe there was one prior case to this case where cryptocurrency became an issue. And we were insisting upon giving me the opportunity to conduct a daubert hearing of this particular expert who had no background in computer technology. And in fact, she had degrees that had nothing to do with computer. And most of her analysis was based on hearsay from what others had done. And in that case, I think the court should have granted a daubert hearing. And I suspect that, well, I don't know what the court's conclusion would have been otherwise. But in this case, by failing to do that, and by saying, well, it goes to the weight instead of admissibility, I think the court made a fundamental error, which recently was just corrected by the rule with respect to daubert. Thank you very much. Thank you. Mr. Lieberman. Thank you. Thank you, counsel. Would the counsel for the United States introduce himself on the record, if he can? Good morning. May it please the court, Dave Lieberman for the United States, with me at counsel table is Assistant United States Attorney Chris Markham. Unless the court prefers otherwise, I'll start with the compulsory process issue. The district court appropriately exercised discretion in declining to enforce Mr. Crater's federal agency witnesses because Mr. Crater failed to proffer below the relevancy and materiality of those three witnesses. So what you're saying is this case is similar to Vasquez-Rosario. We don't even have to go into a TUI analysis. It's simply if the court determines it's not relevant, it's not material, that's the end of the story. That's absolutely correct, your honor. The district court found, joint appendix page 538, that Mr. Crater's testimony through his proffer from these three witnesses would be relevant, material, or vital to his defense. I don't see anything in the briefs where Mr. Crater has directly challenged that relevancy ruling to this court. He is instead making a more fundamental challenge that the framework. He just wants an absolute right to bring the witnesses in. Absolutely. And my response to that, and this is going to some of your honor's questions, is that the Supreme Court has said otherwise. Valenzuela-Bernal is still good law. It's still on the books. And in that case, the court set out the principle that a defendant cannot establish a violation of a constitutional right to compulsory process absent a colorful showing that the witness's testimony would have been both material and favorable to his defense. This court has said the same thing in several published opinions, including the Mount case that we cited. That principle, jurisprudential principle, controls this case. And because Mr. Crater has not challenged the district court's relevancy ruling, it also controls, it also, his claim fails for that reason. Let me ask you, let's assume the information is material and it's favorable to him. Is the guard's position that he would still have to go through TUI, or it is a matter that the court can make the determination once there's a subpoena, the court can make that determination? Let me say, from my experience as a district judge for approximately 15 years, there are many times when you're a defense attorney, you don't know who you're going to sit, if your client's going to sit or not. You may have potential witnesses, but you don't really decide till the last minute. So it's not like you have four or five months to say, TUI regulations, this is who I want to bring to trial. Those are like split-second decisions sometimes. And sometimes I was concerned that TUI could violate a constitutional right. What I would always do is, under violence, whatever, now just say is it relevant and make the determination. But is it the guard's position that TUI requires defense counsel, if you get to the material favorable test, to still notify USDOJ or the agency and then go through that process? Or is it something the court can determine? Again, as I did many, many times. In those cases, it didn't go on appeal. So maybe I was wrong, maybe I was right. Yes, it is the government's position that a criminal defendant seeking to subpoena a government witness or government documents must comply with TUI regulations. And that applies to two out of the three subpoenas at issue here. And then the district judge, if the defendant does not comply with TUI, would have discretion to quash on that basis. Counsel, can I ask you, how does the government think the process should work, just very practically, like Judge Helpe was just asking? Because here, what struck me was, it doesn't seem there was even a subpoena. You can correct me if I'm wrong. And there was just the designation of the witnesses potentially on a witness list. And then sort of the whole subpoena process was a bit short-circuited by the government raising the TUI regulation issue. So I just, I wonder, first, how do you think the process should work, ideally, from the government's point of view? And second, I am concerned that the defendant perhaps lost a full opportunity to make a proffer and that it was a bit short-circuited by the focus on the TUI regulation question here. Sure, as to procedure, I just want to point out, it's in the record that the government, the AUSA, advised counsel at an early stage of the proceedings that there were TUI regulations out there and that if he wanted to subpoena a government witness, he should comply with the TUI regulations. And so this is not a case where the attorney was not, didn't know about the regulations. Counsel. And in most cases, let me say, probably almost every experienced defense attorney, who's at least on the CJA panel, knows about TUI. So that's, it's probably not an issue unless you have a brand-new attorney who's never heard of it. Yes. And so in that case, so in our view, counsel should have been, proceeded down the, submitted the TUI request to the agency. One of the agencies asked for the subject matter of the testimony. Another one of the agencies asked for subject matter and relevance. If the agencies declined, then the attorney can approach the district court on a motion to compel. And I, this was brought up in the briefs, to the extent that there was any work product privilege at issue. We don't think there is in this case. We don't think there is in any ordinary cases. Relevance, materiality. These are things that are aired all the time in pretrial proceedings through motion and limine practice. But assuming there was, that counsel can seek a protective order, limiting its disclosure to only the agency. Counsel can file motion, submissions under the seal with the district court. If the agency declines, ex parte. If counsel's worried that any disclosures might tip off the prosecution as to the nature of the defense. None of that occurred here. Because counsel, as the district court noted, never even attempted any effort to go down the TUI path. You mentioned something that is somewhat of a concern. Because Mr. Lopez, or any defense attorney, may have a theory for the defense that he doesn't want to disclose. And again, as you're saying, he might black it out or not disclose at all. But then how does the agency know how to respond? And again, these are, sometimes it can be just one question. Two questions that are the crux of the defense. And if you advance that to the government or the agency, the prosecution will know exactly where the fence is going. That's a concern I have. And I go back to my response that there are tried and true methods in the federal rules through protective orders or through under seal filings, ex parte filings with the district court. This happens quite frequently in request for expert funds. If counsel is genuinely worried that disclosure would reveal any privileged work product material. Now, I'll go back to a special point that I started with. The type of inquiry that the district court conducted here, in terms of assessing relevance, assessing materiality, this happens frequently in courtrooms around the country every day as parties file motions and limine. Under 401, 403, the district judge asks, tell me what the relevance is and makes a determination. And I have not found any case law, Mr. Lopez has not cited any case law that this pretrial hearing process violates the Sixth Amendment. And we think that what TUI invites mirrors that process. But this all circles back to, I think, the constitutional point. The court doesn't need to, I don't think, engage in the ins and outs of TUI. So we could, similar to your position, similar to Marquette Rosario, we could resolve this on relevancy, materiality. Yes, the district court appropriately exercises discretion based on the proffer that was given to the judge, that there was, that three witnesses would not have offered any relevant or material evidence. If I just, I don't think the court needs to indulge the text history and traditions point from Bruin, but I would just like to make two responses to Mr. Lopez. First response on text, Valenzuela-Bernal is a textually based opinion from the Supreme Court. At page 867, the Supreme Court looks at the text of the Sixth Amendment, notes that it's the compulsory right for obtaining witnesses in his favor, focuses on those last three words and says, the Sixth Amendment does not, by its terms, grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses. And so because Valenzuela-Bernal is a textually grounded opinion, it comports fully with Bruin's emphasis on the text. History and tradition. We cited the Wigmore Treatise in our brief, and Wigmore reviewed a bunch of common law authorities and said that the compulsory process clause was designed to give criminal defendants the same subpoena right as the government. No more, no less. And when the government sends out subpoenas for investigations or trial, the subpoenaed witness can come to the district judge, file a motion to quash for many of the same reasons that we asserted here. So we are not, the right here is the same. And so it comports with history and tradition. Counsel, just going back, do you think there's any basis in the record, though, to conclude that, again, the analysis of relevance and materiality, the proffer was somehow short-circuited by the focus on the TUI regulations issue? No, no, Your Honor. Because the district court, I think it's, and I can't remember which trial day, but twice during the day, invites the proffer, then the court gives its tentative holding. And at the end of that, the district judge said to defense counsel, I'm happy to revisit this again throughout this. Just let me know. So you think that opportunity to provide additional evidence cured any potential problem? Exactly. And so to the extent that there was any concern that defense counsel did not get a full-throated opportunity to state his best proffer to the district court, the district court, right after giving its tentative holding, said, you can come back to me during the trial if you have anything else, and I'll look at this again. Final point. And I believe that occurred when the judge said that. She said, I have a jury about to come out, but we can revisit this. Is that what happened? Yes. And I think it's appended here to one of the briefs. Yes, we mentioned it in our briefs. This district judge would give tentative rulings at several junctures and on several disputed issues and invite the parties to come back and supplement their positions if they thought the judge forgot anything. If they don't come back, would that be a waiver? Or what, you know, I assume that's what your argument is. Yes. Any additional argument? If they don't come back, is the level of our appellate review plain error? So this court's appellate review would be restricted to the facts that were proffered to the district judge. We made this point in our brief. A defendant can't come back later or up here and offer this court facts that were never proffered to the district judge. I know you mentioned that. You said that you can't make the proffering now on appeal, expand the proffering. It's what's limited to what's in the record. Correct. And one other point on history and tradition. And let me just backtrack. This is not a case where the judge said, no, no, no, I don't want to hear more proffer. The judge never foreclosed any other opportunity of supplementing by motion or orally or anything else. Quite the opposite. Your honor, the judge invited parties to come back if either wanted to revisit a ruling. Final point, even if we could surmount all of the, Mr. Crater could surmount all of this harmless error. We've charted out in our brief, even using the defense's appellate proffer, all the problems that the subpoenaed witnesses, their personal information was largely based on hearsay. The sought after facts, largely some of them were aired at trial. Their testimony was not favorable. The only thing that Mr. Lopez said, well, I could have cross-examined them on their failure to investigate facts. The district court quite rightly said, well, that may go to bias, but the government hasn't called these witnesses and you haven't laid a foundation to explain why any of this is relevant to any of the other fact witnesses at trial. Is there any case file that suggests this should be structural error review? Not from this court and not from any court that I'm aware of. I don't see anything in, I don't see anything out there. You're not aware of any? No. This court has said over and over again that this is the compulsory process clause issues are amenable to harmless error review. Overlay on top of this, the overwhelming evidence of guilt. Mr. Crater's personal representations about $300 million in gold backing in a Texas warehouse, $100 million in deposit at a Spanish bank, this MasterCard partnership, that where he had met with the MasterCard folks, and all of that, false. If I could, I'll just briefly comment in my short time on the Rule 702 issue. The district court appropriately exercised its discretion and declined to hold a hearing. That's what this court said quite forcefully in the Filippos decision that we cited to in our brief. Ms. Clegg had fully cataloged her qualifications. She was the director of investigations at a blockchain and analytics company and a cryptocurrency intelligence company. She had given, she had trained Department of Justice personnel, Treasury personnel, DHS personnel, Interpol. Shouldn't Mr. Lopez, at least, have been given, outside of the jury's presence, an opportunity to wadir the proposed expert or challenge her? I don't think the district court was obligated to give him that opportunity. In light of the fact that the expert had fully cataloged her experience, there was nothing in the record suggesting that she lied in any way in cataloging her experience. And at that point, all the, at least on qualifications, the district court appropriately exercised its discretion. In terms of- This was all done on the papers and oral argument, is that right? Yes. There was the chance to address it at oral argument, just not of wadir the expert. Yes. There was a huge back and forth exchange at the final pretrial conference where all of this was aired. And in terms of the qualifications, the record provides an ample basis for the district court to say that she's qualified. And still, at trial, even though she was admitted, once she testified, she has to be qualified before the jury as an expert. She went through all that again. Yes, Your Honor. Right. And counsel can cross-examine her there, and if there's any issues, the judge can always revisit the Dober issue, and that didn't happen. Exactly, Your Honor. Right. There was a full-throated cross-examination. I can't remember the exact record site, but there was an objection at one point, I think, when the expert said something that may have strayed from her expert report. The district court is on the ball, I think, and sustains the objection. And so all of this was aired at trial. And I know I'm over time. Just one additional point on the reliability of the expert. The expert reports that she conducted a blockchain analysis, and that's the general ledger behind MyBitcoin. The defense's own expert is that Joint Appendix 1594 agreed that a blockchain analysis reveals details and contents about the system. And so we have, even the defense expert said, this is a valid method for investigating a cryptocurrency. Now, the defense expert disagreed as to the ultimate conclusion, suggested that the blockchain analysis wasn't dispositive on whether or not this was a valid cryptocurrency. What the court is there is to make sure both experts are relevant and reliable under Dobert, and then it goes to the jury. Exactly, Your Honor. And my point was that the district court got this just right when she said, looked at all this, heard argument and said, this goes to weight, not admissibility, but that's an appropriate exercise of its discretion. Unless the court has any additional questions or concerns, the government asks that the court affirm. Any questions? Okay, thank you very much. Thank you. Mr. Lopez, you have three minutes for rebuttal. Please reintroduce yourself back on the record to begin. Scott Lopez for the appellant. Going first to Judge Rickleman's question, we relied upon Arizona v. Fomonte and Weaver v. Massachusetts for the structural error. The position is that this was not just a trial error, this was a structural error because it prevented a constitutional right to present a defense. With respect to the TUI, it's interesting, and we haven't talked too much about the CFTC individual, but he was actually the one who allowed Mr. Roche, however you say his name, to basically not produce any evidence during the CFTC investigation, and he was the epicenter of this whole matter. And interestingly, the TUI regulation for the CFTC says, in any proceeding, an employee or former employee of the commission shall not testify concerning non-public matters related to the business of the commission unless authorized to do so by the commission upon the advice of the general counsel. That's 17 CFR 144.3. So this regulation, this TUI regulation basically says, witness, even if you have relevant and probative matter and exculpatory matter, you cannot testify if a defendant sends you a subpoena without permission from this. That is clearly a violation of the Sixth Amendment. With respect to the subpoena issue... Okay, but that's that regulation, but the judge here made the analysis that there was no relevancy, so that kind of makes that wrong. Had the judge said it's relevant, but I can't give it to you because the agency just doesn't want to give it to you, then you could make that... Your Honor, that's Alice in Wonderland analysis. Essentially, what the government is saying is, tell us what you want to have this witness say, and then we'll decide whether or not we'll allow that person to say it. Why would I disclose my defense to them in advance if I wanted to cross-examine them on their inadequate investigation? Counsel, how extensive of a summary do you think you are obligated to provide under that regulation? Can you give me a practical sense of what you think you would require to... Your Honor, it's my position that we do not have to comply with TUI because that was a civil case. No, I understand your position, but if you had had to comply, do you have an understanding of how much of a summary you would be obligated to give the government under that regulation? I mean, if I was required, if I was compelled to do so, I perhaps would say I'd like to ask questions about their investigation. So just a general statement of the subject matter. A very general statement. And then if the court wanted more specifics, you could ex parte, fill the court if necessary. I could do that, Your Honor, but again, TUI wasn't concerned with a criminal case, and it wasn't concerned with governmental documents. I mean, it was concerned with governmental documents. It wasn't even concerned with testimony. So, to say it's... Please finish. Thank you, Your Honor. Finally, you raised the issue of the subpoena. There was only one witness that wasn't adequately subpoenaed, and that's because the address we had on him was apparently... I didn't mean to raise it as an error on your part. I didn't... I was just trying to understand what happened practically. Finally, with respect to the cryptocurrency and the expert concession, what the government missed here was that this was a private cryptocurrency, a private virtual currency, which their expert never looked into, wasn't even aware of it, didn't put it in her report, and only on cross-examination conceded that it could have been. That is a fundamental defect that we were not allowed to present. And if we had had an opportunity to bear this witness, it's possible that this witness wouldn't even have testified. And with that, I thank you for your time. Thank you very much, all counsel, and thank you. Thank you, counsel. That concludes argument in this case.